Landry et als. vs. Landry.

---

## No. 13,744.

### ALIDA LANDRY ET ALS. VS. J. D. LANDRY.

#### SYLLABUS.

1. Where a defendant in a petitory action has been in possession, claiming as owner, of the property sued for, for more than thirty years, the action is barred by prescription, whether he can show title or not, unless the plaintiff is within some exception established by law. *A fortiori* is this the case where it appears that the plaintiff has always lived in the neighborhood and is aware of such possession and claim.

2. Minors are within an exception established by law, and the prescription above referred to is inapplicable to them. And where it is once made to appear that the person whose claim is affected is a minor the burden is cast upon the party who pleads the prescription, to show at what time it began to run against such person by reason of his attaining majority.

Landry et als. vs. Landry.

3.  As between an administrator and the heirs of an estate, the latter are entitled to notice, other than by publication, of the filing by the former of his account, and, in default of such notice, they are not bound, save as to creditors, by the judgment of homologation.

4.  Where it is claimed that a person is estopped from suing for the recovery of property by reason of his having received the proceeds of the sale thereof, it should be made to appear, in order to maintain the plea, that such proceeds were received knowingly, since if he received them ignorantly, supposing that they came from some other source, though he may be compelled to refund, there is no estoppel.

APPEAL from the Nineteenth Judicial District, Parish of Iberia—Burke, Judge ad hoc.

Weeks & Weeks and Todd & Davis, for Plaintiffs and Appellants.

Anthony N. Muller, Thomas H. Thorpe and Andrew Thorpe, for Defendant, Appellee.

The opinion of the court was delivered by

MONROE, J.   This is a petitory action for the recovery of a certain tract of land in New Iberia, to which the plaintiffs set up title by inheritance from Philemond, and Elize, Broussard, their grandparents, and of which, they allege that the defendant unlawfully holds possession, claiming to be the owner.

The defendant, for answer, avers, that in, or about, April, 1866, his wife, Clelie Broussard, who was one of the daughters, and heirs, of said Philemond, and Elize, Broussard, bought the interests of her coheirs in the property in question and took immediate possession thereof, as owner, and that she retained such possession until her death, in 1896, when defendant, as her universal legatee, succeeded her; and that defendant has, since then, been in undisputed possession of said property, as owner.   He alleges that the notary before whom the act by which his wife acquired said property was passed neglected to register the same and that he, defendant, has been unable to find the original of said act or to ascertain what has become of it.   And he further alleges and pleads that the plaintiffs are estopped to urge the claim here set up for the reason that they have accepted the estates of their grandparents, including the proceeds of the sale of the property which they now seek to recover, and have otherwise acquiesced in the disposition made of said property.   Defendant further pleads res adjudicata and prescription and makes a claim, in reconvention, for damages.

It appears from the record that Philemond, and Elize, Broussard died in 1865, or prior thereto, the dates not being shown, and were survived by seven children, or their representatives, to-wit: Eleonore, who died unmarried and without issue; Elina, married to Palemon (or Rosamond) Broussard, who died, leaving children; *Elmaize,* married to Alexandre Broussard, who died, leaving children; *Euzeide,* married to Esteve Lamperez, who died leaving children; *Clelie,* married to the defendant, who died leaving her husband as her universal legatee; the representatives of Elesmene, a predeceased daughter, married to Louis Dugas; and the representatives of *Emma,* a predeceased daughter, married to Edouard Broussard. It further appears that there was a son, Belizaire, who died unmarried and without issue, and who is not shown to have survived his parents. The original plaintiffs were Alida and Loe, children of Elismene; Eleonore, Marie, and Euzeide, children of Elina; Edgar and Joseph, children of Euzeide; Lionel and Amanda, children of Emma; and Louis, Oscar, Edmee and Julia, children of Elmaise. Of these, Louis and Oscar, formally withdrew from the suit before the trial in the lower court, and, thereafter, there was judgment in favor of Lionel, and Amanda, Broussard, each for one-fourteenth of the property claimed and rejecting the demands of the other plaintiffs. From this judgment all the parties cast have appealed.

It further appears from the record that the defendant qualified as administrator of the succession of the said Philemond, and Elize, Broussard, and, in October, 1865, caused an inventory to be made, which showed property to the value of $6950.58, of which $2500 represented the value of the real estate here claimed, and the balance represented the value of promissory notes, live stock, furniture and other movables found among the assets of the estate. Shortly thereafter, to-wit: November 30th, 1865, the whole of the said property, with the exception of the promissory notes, appraised at $3970.08, was sold at public auction, by order of court and agreeably to the recommendations of family meetings, as it is claimed, and the real estate appears to have been adjudicated to "Edourd Broussard for his children, Mrs. Clelie Broussard, wife of Dorcily Landry, Elmaize Broussard, wife of Alexandre Broussard, Euzeide Broussard, wife of Esteve Lamperez, Miss Eleonore Broussard; Elina Broussard, wid. of Rosamond (or Palemon) Broussard; and Louis Eloi Dugas, for his children, for the sum of $1950.00", adding to which the price of the movables, and the total proceeds of the sale amounted to $2768.60. Thereafter, no further steps

appear to have been taken, in court, until March, 1871, when a petition was filed on behalf of Edourd Broussard, tutor, praying for an account, and, agreeably to said prayer, the defendant, in June, 1871, was ordered to file an account within ten days. This order does not seem to have been complied with, but, upon August 5th, 1872, the defendant filed an account in which he makes substantially the following showing, to-wit: he charges himself with the total proceeds of the sale made in 1865— $2768.60, following which, appears this statement: "This sum must be increased with the difference between the price of the adjudication of the town lots situated in New Iberia and the amount of the purchase price thereof, subsequently made by the heirs thereof to Clelie Broussard, wife of J. D. Landry, to-wit: $550.00". He then charges himself with the notes, which were valued in the inventory at $3970.08, deducting therefrom $552.23, as *"uncollected"*, and $2419.84 as "bad debts", and, from the balance, thus arrived at, further deducts various debts, charges, etc., and presents for distribution the sum of $2898.55, which, Eleonore Broussard having died unmarried and without issue after the opening of the succession, he proposed to distribute among the six surviving children, or their representatives, giving to each child, or branch, $483.09. He then supplements the general account so made with the particular accounts of the various distributees, charging them with payments on account of the movables purchased at the auction sale, etc., and showing balances in their favor, except in the case of Elmaize Broussard's representatives. With this account, there was filed a petition for homologation and for the discharge of the accountant, and we find in the record the following note of the evidence offered in support of the prayer of said petition, to-wit:

"STATEMENT OF FACTS.

"1st. All proceedings of estate aforesaid.

"2nd. Sale of property—*proces verbal* thereof, marked 'A'.

"3rd. Notice and advertisement in the newspaper, the *Echo,* of St. Martin, the official journal of the parish of St. Martin.

"These are to certify that the above and foregoing comprises all the evidence adduced upon the trial of the application for the homologation of the account of the administration presented the 5th day of August, 1872, by J. Dorcily Landry, administrator. (Signed) H. V. Fournet, Clerk."

Upon the face of the account there is a waiver of notice by Alida

Dugas, wife of Chas. Landry, and her husband, and by Clelie Broussard, wife of the accountant.

After the rendition, December 26, 1872, of the judgment homologating said account and ordering the discharge of the administrator "upon payment of all sums carried as due, to the interested parties", there was a cessation of proceedings in the succession of Philemond, and Elize, Broussard, until the filing of this suit, in July, 1899. Turning our attention, however, to matters outside of court, and going back to the period following the sale at auction in November, 1865, the defendant claims, and has undertaken to prove, that, after the adjudication of the real estate to the heirs, and not later than January, 1866, the other adjudicatees, by act before Edmond Monge, notary public, sold their respective interests in said property to his wife, Clelie Broussard, and that he, thereafter, inherited it, as her universal legatee. His statement concerning the matter is that the parties all met at the house of his brother-in-law, Esteve Lamperez, together with the notary, who, with two witnesses, whom he took with him, had gone there from St. Martinville, and that the act was there signed by all the parties in interest.

Lamperez swears positively that no such act was signed and that no such meeting took place in his house. It is not pretended that those who are said to have signed as tutors had any authority to sell the interests of their wards, nor is it claimed that the act which is said to have been executed was ever recorded. There is some testimony to the effect that the defendant and his counsel have made an effort to find the original act, but not as much light is thrown upon the subject as might have been. Thus, for aught that appears, Mr. Monge's sole official achievement as a notary public, was to go to Mr. Lamperez's house, taking two witnesses, whom the defendant was unable to name, and pass the act in question. Other than this, there is nothing to show that he was a notary at all, or that he ever acted in that capacity at any other time or place, or left any records behind him. Under these circumstances, and particularly in view of the fact that Lamperez, at whose house this family gathering, the purpose of which was finally to dispose of the home of his wife's parents, is said to have taken place, and who is the only living survivor, except the defendant, who was connected with the transaction, positively and emphatically contradicts the testimony of the defendant, whilst the defendant brings no witness and points to no circumstance, except the long silence of the plaintiffs,

to corroborate his testimony, we have been unable to reach the conclusion that the sale in question is established. We find, upon the other hand, that the defendant and his wife went into possession of the property in question in the latter part of 1865, or early in 1866, and that they remained in undisturbed possession, claiming as owners, until the filing of this suit in July, 1899, that is to say: it was held as the property of the wife until her death in 1896, since which time it has been held by the defendant as the universal legatee of his wife.

Counsel for plaintiffs insist that defendant acquired possession of said property in his capacity as administrator and that he has not shown any change in the character of that possession, the contention being that the alleged adjudication of the property to the heirs·is not shown to have been legally effected inasmuch as the order of court and the proceedings of the family meetings on behalf of the minors have not been produced. In answer to this it may be said that the *proces verbal* of the auctioneer recites that the sale was made pursuant to an order of court, and to the advice of family meetings, and to the request of the administrator, and the fact that that recital remained of record, unchallenged, for more than thirty years might justify a presumption of its verity. Gentile, Administrator, vs. Foley, Administrator, 3rd Ann. 146. But whether the order of court and the advice of the family meetings were obtained or not, it is indisputable that the property was adjudicated, by an auctioneer who claimed that he was acting under such order and authority and by such request, to the heirs in whom the title was already vested. This transaction had, at least, the effect that a surrender of the property by the administrator to the heirs would have had, in the absence of any action by the court or by the family meetings. The administrator no longer had the property under administration, but, having surrendered it to the owners, thereafter occupied the same relation to it that any other stranger would have occupied, and, although we have been unable to concur in the conclusion, reached by the learned judge *ad hoc,* that there was such a conveyance to Mrs. Landry as is.claimed by the defendant, we think there can hardly exist a reasonable doubt that there was an understanding of some kind upon the basis of which she took possession of said property as owner. Our reasons for this conclusion, briefly stated, are as follows, to-wit:

It would otherwise be impossible to account for the fact that Mrs. Landry and her husband, the defendant, were allowed to remain in un-

disturbed possession, as owners, for more than thirty years of a piece of real estate which had been the homestead of, and was the only immovable property left by, an old couple, whose numerous heirs, children and grand-children, were living, and continued to live, in the immediate neighborhood. Oscar Broussard, who was sworn by the plaintiffs, testifies that he was told by his mother (Elmaize, wife of Alexander Broussard) that the property in question had been sold to his aunt Clelie at auction, from which, considered in connection with the recitals in defendant's account, we are inclined to think that it was understood that there should be a formal adjudication of the property to all the heirs, but that Clelie Broussard (Mrs. Dorcily Landry) should thereafter pay the amount bid, *plus* a sufficient amount to make the price $2500, and take the property. Mrs. Alida Landry, one of the plaintiffs, and Esteve Lamperez, whose wife was one of the children of Philemond, and Elize, Broussard, have both given their testimony, and although they both participated to some extent in the proceedings connected with the settlement of the succession of said decedents, and were evidently apprised, at the time, of what was being done, they do not deny that defendant and his wife have occupied said property as owners, though they offer no explanation of that fact. And, finally, Edourd Broussard, as tutor, in March, 1871, filed a petition, in which he prayed that the defendant be ordered to file an account, and such an order was made. There is no complaint in that petition, however, as to the disposition which had been made of the real estate, though the defendant and his wife had then been living on said property for about five years. We, therefore, conclude that there had been an adverse possession of the property in dispute, under a claim of ownership, for more than thirty years before this suit was filed, and that the plea of prescription of thirty years is, therefore, good as to the plaintiffs who are not excepted from its operation by reason of minority.

As to the plea of *res adjudicata* it does not appear that any of the heirs, with the exception of Mrs. Alida Landry and the defendant's wife, took cognizance, or were notified, of the filing of the administrator's account, from which it follows that they are not bound by the judgment homologating the same. Millaudon vs. Cajus, 6 La. 222; Carter vs. McManus, 15 Ann. 676. Nor can we discover any sufficient reason for holding that those who are in no wise bound by the account should be estopped by reason of having received payments from the administrator, since those payments appear to have been made and

received as amounts due them as heirs of their grandparents, and not under circumstances which would justify the belief that they were informed of the recitals contained in the administrator's account in regard to the real estate. In fact, the two payments, amounting to $190, which appear to have been made to Mrs. Loe Dugas, wife of J. J. Marie, were so made more than a year before said account was filed, and the receipts given by her convey no intimation that she understood that she was receiving the purchase price of the real estate in question. Under these circumstances, it cannot be said that there was any ratification of the alleged sale to Mrs. Dorcily Landry. Succession of Troxler, 46 Ann. 769; Breaux vs. Sarvoie et als., 39 Ann. 243.

As to the plaintiff, Mrs. Alida Landry, it appears, partly from her own evidence, that she had attained her majority when the wife of the defendant took possession of the property in question; that she took cognizance, and waived notice, of the account filed by defendant, in 1872; that, in 1892, she sold defendant a lot adjoining said property, by a description, in which the latter is referred to as belonging to Mrs. Clelie Broussard, wife of Dorcily Landry; and that she has remained silent as to her present demand for more than thirty years, although living in the same neighborhood as defendant, who has, during all that time, been living on the property which she now seeks to recover. We concur with the judge ad hoc in the opinion that the pleas of prescription and estoppel are well made as to this claim and should be sustained.

As to the plaintiffs, Mrs. Loe Dugas, wife of J. J. Marie, Leonie, and Amanda Broussard, and Edgar, and Joseph, Lamperez, they appear upon the face of the record to have been minors at the date at which the defendant's wife went into possession of the property in dispute, and the burden was upon the defendant to bring them within the prescription relied on by him. As this has not been done, and as, for the reasons which have been stated, they are not affected by the pleas of res adjudicata and estoppel, we conclude that they are entitled to recover.

As to the plaintiffs, Eleonore, Marie and Euzeide, Broussard, and Edmee, and Julia, Broussard, there is nothing in either the pleadings or the evidence to take their claims out of the prescription of thirty years; the exception as to them should, therefore, be maintained.

Counsel for the plaintiffs, in their brief, suggest that the plaintiffs should be entitled to recover the interests inherited by them from Belizaire, and Eleonore, Broussard, who died unmarried and without issue.

This is true as to Eleonore, who survived her parents, but there is nothing in the record to indicate that Belizaire so survived. On the contrary, the impression which we derive from the record is that he died first. Concerning the interest of Joseph, and Edgar, Lamperez, it appears that their mother, Euzeide Broussard, left three children at her death, viz: Omer, Edgar, and Joseph, and that Omer died subsequently, so that his interest descended to his father and two brothers, which latter are therefore entitled, each, to his original interest ($\frac{1}{3}$ of 1-7, or 1-21), *plus* the interest inherited from his aunt ($\frac{1}{3}$ of $\frac{1}{6}$ of 1-7, or 1-126), *plus* the interest inherited from his brother, Omer ($\frac{3}{8}$ of 7-126, or 21-1008), making a total of 11-144 to each, or 11-72 to both. The interests of the others, whose claims have been allowed, may be stated as follows, to-wit:

Loe Dugas, wife of J. J. Marie, and Leonie, and Amanda, Broussard, are, each, entitled to his, or her, original interest ($\frac{1}{2}$ of 1-7, or 1-14) plus the interest inherited from her aunt ($\frac{1}{2}$ of $\frac{1}{6}$ of 1-7, or 1-84)—being a total of 1-22.

It is therefore ordered, adjudged and decreed that the judgment appealed from, in so far as it rejects the demands of the plaintiffs, Eleonore, Marie, Euzeide, Edmee, and Julia, Broussard, be and the same is hereby affirmed at the cost of the appellants, and in so far as the said judgment is in favor of the plaintiffs, Lionel, and Amanda, Broussard, that the same be and is hereby amended to the extent of awarding to said plaintiffs, each, a 1-12, instead of a 1-14, undivided interest in the property sued for.

It is further ordered, adjudged and decreed that, in so far as said judgment rejects the demands of Mrs. Loe Dugas, wife of J. J. Marie, and of Edgar, and Joseph, Lamperez, the same be and is hereby annulled, avoided, and reversed, and that there now be judgment in favor of said plaintiffs and against the defendant, J. D. Landry, decreeing said Mrs. Dugas to be entitled to an undivided one-twelfth (1-12), and the said Edgar, and Joseph, Lamperez, each, to be entitled to an undivided 11-144 interest in the property herein sued for. It is further ordered, adjudged and decreed that, as between the said plaintiffs, Mrs. Loe Dugas, Marie, Lionel, and Amanda, Broussard, and Edgar, and Joseph, Lamperez and the defendant, the defendant pay the costs in both courts.

BREAUX, J., having been of counsel in 1872, on an incidental issue, recuses himself.

PROVOSTY, J., takes no part.